[Civ. No. 22410. Second Dist., Div. One. Dec. 30, 1957.]

TED NEMER, Appellant, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY (a Corporation) et al., Respondents.

*Assigned by Chairman of Judicial Council.

446

Betts, Ely & Loomis and Forrest A. Betts for Appellant.

Robert W. Walker and Henry M. Moffat for Respondents.

FOURT, J.—This is an appeal from a judgment entered on a verdict in favor of the defendants in an action by the plaintiff for damages for personal injuries and property damage.

There is here set forth a diagram* showing the location of the streets, car tracks, signs, street markings and other matters.

A summary of the facts as developed by the evidence is substantially as follows: The railroad grade crossing warning signals are synchronized with the traffic light signals, which control the movement of traffic on the intersecting streets.

*See diagram on page 448.

The tracks are on an embankment as they approach and cross Freeman Boulevard, and the last 400 feet is somewhat up-grade. The property to the north of the tracks and west of Freeman Boulevard is vacant. There was a double set of white lines on the pavement to the north of the tracks; immediately north of the double white lines the words "Wait Here" were painted on the pavement in white letters eight

feet high; there were four red flasher light signals, all facing southbound traffic; two automatic signal bells; five traffic signal lights; a standard railroad crossing sign attached to the flasher light signals; a sign reading "Two Tracks;" a sign reading "Do Not Stop on Tracks," and a sign reading "Stop on Red Signal." The parties stipulated that prior to and at the time of the accident, the flasher light signals, bells and signals were operating in the manner and fashion in which they were designed to operate. When an eastbound train, as was the one involved in this case, reaches a point 1,084 feet west of the west curb line of Freeman Boulevard, the flasher light signals and signal bells begin to operate. Simultaneously, the traffic light signals change. The three traffic light signals facing southbound traffic on Freeman Boulevard change instantly from whatever position they are in at the moment of activation to flashing red, and after eight seconds each then goes to a solid red signal, which position the lights were in at the time of the impact, and for at least 28 seconds prior thereto. Once activated, the signals remain in operation until the rear of the train passes over the crossing, with certain exceptions with which we are not here concerned.

The plaintiff, at about 9:30 o'clock a. m. on February 26, 1955, was driving his automobile in a southerly direction on Freeman Boulevard. The visibility was good and there was no rain, mist or fog. The plaintiff knew of the intersection and had traveled over it many times, and knew of the signal systems, and he had also seen trains using the intersection on previous occasions. He was driving in the center lane, next to the double white lines, as he approached the intersection, at a speed of about 30 miles per hour. When he was about 400 to 500 feet north of the tracks, he looked at the traffic signal light, which was then green. He did not again look at the signal as he proceeded southward, and did not remember any advance warning sign about 285 feet from the tracks. As he approached during the last 400 to 500 feet, he did not look at the railroad flasher light signals and was not listening for any train whistle. Never, during the 400 feet mentioned, did he look to his right, although the view of any oncoming train was unobstructed. He then drove slowly past the railroad flashing light signals and up onto the tracks. The plaintiff gave conflicting testimony as to whether the traffic light signals changed color as he moved the last remaining feet up to the track, and gave several versions as to how long he

had been stopped on the tracks before he noticed the train, and as to the time of the impact.

The train approached the grade crossing at about 18 to 20 miles per hour, or at the rate of 27 to 30 feet per second, with its bell ringing, with whistle sounding and headlight burning. When the front of the engine was about 150 feet from the crossing, Morrison, the acting fireman, first observed the plaintiff's automobile, which at that time was about 40 feet from the railroad track and traffic signals, and was moving in a southerly direction very slowly. Morrison stated that the plaintiff's automobile came upon the tracks when the front of the locomotive was only 80 feet to 100 feet from it. In the next moment, the automobile came into the view of Yaussy, the engineer, when the front of the locomotive was but 60 to 80 feet from the automobile, and at that instant the engineer placed the train into an emergency brake application. It required, on the occasion in question, between 152 feet to 172 feet to stop the train after the application of the emergency brakes.

Appellant contends that (1) the evidence established as a matter of law that the defendants were liable in damages to the plaintiff under the doctrine of the last clear chance, (2) the court committed error in the admission and rejection of certain evidence, and (3) the court committed error in the giving or refusing of instructions.

■ As to the first contention, appellant cites *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729 [306 P.2d 432], and states that such case is the "pronouncement of the law upon which our cause must stand or fall." A thorough reading of that case convinces us that there is nothing therein to lead to the conclusion that under the facts of the case before us, the last clear chance doctrine applies as a matter of law. The matter of the last clear chance was submitted to the jury under instructions presented by the plaintiff, and the jury found that the doctrine could not be applied to the facts of the present case. The plaintiff, at the time of the trial, did not assert that the doctrine of last clear chance applied as a matter of law, and made no motion for a directed verdict or otherwise. For the purposes of this appeal the evidence is that the plaintiff's automobile drove up and stopped on the tracks when the front of the locomotive was but 60 to 80 feet from it, or when the train was but two to three seconds away. The train required between 152 feet and 172 feet within which to stop after the emergency train brakes

were applied. It appears obvious, therefore, that the doctrine of the last clear chance does not apply in this situation. The plaintiff had the obligation to look and listen as he approached the grade crossing, and further he was obligated to stop ''within 50 feet but not less than 10 feet from the nearest track.'' (Veh. Code, § 575.) ▇ The law recognizes that a railroad grade crossing is a place of danger (*Eastman* v. *Atchison, T. & S. F. Ry. Co.*, 51 Cal.App.2d 653 [125 P.2d 564]), and that a train has the right of way (*Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 P. 788].) The train crew in the present case had a right to assume that the plaintiff possessed normal faculties of sight and hearing, and could see and hear the signals and see the approaching train. (*Martindale* v. *Atchison, T. & S. F. Ry. Co.*, 89 Cal.App.2d 400 [201 P.2d 48].) It was a question of fact as to when the plaintiff reached a position of danger, and further it was a question of fact as to when Morrison, as a reasonable person, should have realized, if ever, that the plaintiff had finally reached a position of danger. The acts creating the peril in this case occurred practically simultaneously with the happening of the accident. ▇ It was appropriately said in *Johnson* v. *Sacramento Northern Ry.*, 54 Cal.App.2d 528, at page 532 [129 P.2d 503] : ''It is only in exceptional circumstances that the doctrine may be applied to cases involving collisions between two moving vehicles or at least in cases where the injured party is driving a rapidly moving vehicle for in such cases the act creating the peril ordinarily occurs practically simultaneously with the happening of the accident and the party sought to be charged can not be said to have had a *last clear* chance to avoid the accident *after* the discovery of the injured party's peril. That the injured party may not ordinarily invoke such doctrine in cases involving collisions between moving vehicles and trains at railroad crossings is established by numerous decisions in this jurisdiction. (Citing cases.)'' Also, at page 534, the court said : ''It is also significant to note that the 'situation of danger' or 'position of danger,' referred to in the authorities dealing with the last clear chance doctrine, is reached only when a plaintiff, moving toward the path of an oncoming train or vehicle, has reached a position 'from which he cannot escape by the exercise of ordinary care.' ▇ In other words, it is not enough, under the last clear chance doctrine, that plaintiff is merely approaching a position of danger, for until he has reached a position of danger, he has the same opportunity to avoid the accident by the exercise

of ordinary care, as has the defendant. In such cases the ordinary rules of negligence and contributory negligence apply, rather than the exceptional doctrine of last clear chance. It is only in cases in which, after plaintiff reaches a position of danger, defendant has a last clear chance to avoid the accident by the exercise of ordinary care, and plaintiff has no similar chance, that the doctrine is applicable.'' And further, at page 541 it is set forth: ''As above indicated, a rapidly moving vehicle approaching a railroad crossing does not reach a 'position of danger,' within the meaning of last clear chance doctrine, until it reaches a point where it can no longer be stopped or turned aside to avoid the collision. Up to that point, it is merely approaching a position of danger and the motorman need not assume in advance that the driver of the vehicle will pass from a position of safety without taking proper precautions. If the driver continues on without taking proper precautions, such as reducing his speed, it is clear that he will pass from a position of safety and into a position of danger in a fraction of a second. The last clear chance cannot come into operation until after the vehicle has reached such position of danger and ordinarily, in the case of rapidly moving vehicles, the remaining time is too short to afford the motorman a *last clear chance* to avoid the accident. It is for this reason that said doctrine has ordinarily been held inapplicable to cases involving accidents between moving vehicles and trains at railroad crossings, . . .'' And, at page 542, quoting *Bagwill* v. *Pacific Electric Ry. Co.*, 90 Cal. App. 114 [265 P. 517], the court said: '' 'Certainly the doctrine of last clear chance never meant a splitting of seconds when emergencies arise. . . . We are not to tear down the facts of a case and rebuild the same so that, by a trimming down and tight-fitting operation, something can be constructed upon which may be fastened the claim of last clear chance. The words mean exactly as they indicate, namely last *clear* chance, not possible chance.' There is no escape from the conclusion that the record before us presents a case where the 'negligence of the injured party was contemporaneous, concurrent, continuing and contributory' with the negligence, if any, of the motorman and such a case is excluded from the operation of the last clear chance doctrine. (*Young* v. *Southern Pacific Co.*, 189 Cal. 746 [210 P. 259].)''

 In *Rodabaugh* v. *Tekus*, 39 Cal.2d 290, at page 296 [246 P.2d 663], the court quoted, with approval, language from *Poncino* v. *Reid-Murdock & Co.*, 136 Cal.App. 223, 227 [28

P.2d 932], wherein it was said: " 'In other words, it is not enough to relieve a plaintiff of his own negligence that the defendant may have had a *chance* to avoid the accident, but defendant must have had the *last chance* and also had a *clear chance* to do so by the exercise of *ordinary* care. That he should have had the *last chance* implies that his chance to avoid the accident must have come later in point of time than any similar chance on the part of the injured person. That he should have had a *clear chance* implies that he must have had more than a *bare possible chance* to avoid an unexpected peril created practically simultaneously with the happening of the accident by the negligence of the injured party.' "

The court in *Hall* v. *Atchison, T. & S. F. Ry. Co.*, 152 Cal.App.2d 80, at page 85 [312 P.2d 739], said:

"The rule is that there must be substantial evidence to show defendant had a last clear chance to avoid the accident. (Citing cases.) To the same effect is also the case of *Brandelius* v. *City & County of San Francisco*, 47 Cal.2d 729 [306 P.2d 432], holding that before the last clear chance doctrine may be applied the necessary elements, as there indicated, must be supported by substantial evidence. Time is such an element and an all-important factor.

"The time for defendant's exercise of any last clear chance commences only at such time as he has both actual knowledge of the injured person's 'position of danger' and actual or constructive knowledge that such person 'cannot escape from such situation.' It affirmatively appears to us that in considering the evidence as a whole, there was no substantial evidence that all of these elements had been affirmatively established."

Appellant's next contention was that it was error to refuse to receive into evidence a picture taken some five months after the accident, apparently showing, or attempting to show that vehicles frequently became caught upon the railroad tracks. Appellant sought to show by the photograph that the defendants had knowledge of the conditions at the intersection at the time of the accident. There was an objection by the defendants' counsel upon the ground that there was no proper foundation in that there was no showing that the conditions depicted were similar to those which may have existed at the time of, or prior to the accident; that since the photograph was taken after the accident it could not show knowledge of the defendants of conditions

at the intersection at the time of or before the accident; that the conditions depicted were immaterial and irrelevant and that without a foundation the picture was prejudicial. There was no testimony or offer of testimony that the person who took the picture had any knowledge of traffic conditions, of the signals, or of the manner in which the trains operated at the intersection at the time of or before the accident. There was no testimony as to the time of day when the picture was taken. The court properly sustained the objection.

Appellant's next contention to the effect that the court erred in refusing to permit the plaintiff to introduce evidence concerning other grade crossings on either side of Freeman Boulevard is without merit. At no time did the plaintiff offer any evidence tending to establish the conditions of traffic, the types of signals or the physical characteristics of other or similar railroad grade crossings, other than the attempt to introduce the picture heretofore discussed.

Appellant has set forth nothing in his briefs with reference to the claimed error of the court in the giving or refusing of instructions, and we assume that he has now abandoned any such issue.

The judgment is affirmed.

White, P. J., and Drapeau, J.,* concurred.

A petition for a rehearing was denied January 24, 1958, and appellant's petition for a hearing by the Supreme Court was denied February 26, 1958. Carter, J., was of the opinion that the petition should be granted.

---

*Assigned by Chairman of Judicial Council.