[Civ. No. 19515. First Dist., Div. One. July 24, 1961.]

E. DAVID AKERS et al., Appellants, v. THE CITY OF PALO ALTO et al., Respondents.

J. W. Ehrlich and Edward F. Dullea for Appellants.

Robert E. Michalski, City Attorney, Stanley R. Norton, Deputy City Attorney, Rankin, Oneal, Luckhardt & Center, William A. Ingram and Dan Oneal for Respondents.

BRAY, P. J.—Plaintiffs appeal from judgment, after jury trial, in favor of all defendants.

## QUESTIONS PRESENTED

1. Instruction given.
2. Instructions refused.
3. Effect of *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457].

## RECORD

Plaintiffs were injured when the automobile in which they were riding was struck by a Southern Pacific train at a railroad crossing in Palo Alto, at which crossing employees of the city of Palo Alto were painting stop lines. Plaintiffs sued the Southern Pacific Company, James Goodwin, an employee of the city of Palo Alto and, under the Public Liability Act, the city of Palo Alto. No contention is made that the evidence does not support the verdict in favor of all defendants.

On the morning of the accident plaintiff E. David Akers was driving westerly along Palo Alto Avenue with his wife, plaintiff Mary, sitting beside him, intending to cross the railroad tracks. At this point the avenue is divided by a concrete dividing strip some 84 feet in length. The westbound lane is guarded at the right of way by a half gate and other signal devices installed by the Southern Pacific. The eastbound lane is unguarded by a gate on the east side of the crossing, as the normal traffic thereon comes from across the tracks, the entrance to the tracks being guarded on the west side by a half gate. The city was painting stop lines on the westbound lane near the railroad right of way. Goodwin was a flagman and helper on the paint truck in charge of another employee, Nick Merca. The entire westbound lane was blocked off from traffic to prevent cars from running over the freshly painted lines. Merca told Goodwin to direct traffic around where he was painting. Though normally when there were two lanes in one direction, as here, the traffic was not directed into the oncoming lanes, Merca had Goodwin direct the traffic over to the oncoming lanes.

Goodwin testified that he flagged the Akers' car into the other lane and then when it was about 40 to 50 feet from the tracks he stopped it because he heard the gong sound and the train whistle. The car remained stopped for 10 to 15 seconds. Goodwin proceeded behind it to flag another car. Goodwin denied flagging Akers forward. Then the Akers' car proceeded to the track where it was hit by the oncoming train. Dr.

Akers testified that the flagman stopped him. The doctor remained stopped for about 10 seconds; then the flagman signalled him to go ahead, although the doctor could not recall what sort of a signal was given him. ''My next recollection was that I was getting away and that is all I remember.'' He remembers nothing thereafter until he awoke in the hospital. He was then asked if he heard any bells, saw any crossing gates, or any train or any railroad tracks; he said. he did not. While the doctor recalled the signal to stop and then the signal to proceed, he could not recall such matters as to where the flagman was standing, whether when he first stopped he turned off the ignition on his car, the speed at which he proceeded, whether he stopped more than once, whether the radio was on in his car, or the windows down. Mrs. Akers recalls nothing that occurred after leaving the friends' home where the trip started.

The train engineer testified that his train which would not stop at Palo Alto was going about 65 miles per hour; that when he was about 300 feet from the crossing he saw the Akers' car emerge from behind some bushes maintained by the city, which somewhat obscured his view. As soon as the car got on the right of way, he put on the emergency but could not stop the train.

The evidence shows that the protective devices at the crossing were working, the barrier down, the lights were flashing, bells rang, the train whistle blew and the rumble of the oncoming train was audible. There was no evidence to the contrary, unless, as contended by plaintiffs, they were entitled to the presumption of due care on the part of plaintiffs.

1. *Instruction Objected To.*

The court gave the usual instruction to the effect that it is negligence not to see that which is clearly visible or not to hear that which is clearly audible. Plaintiffs concede that the instruction clearly states the law but contend that there was no evidence to warrant its being given. In view of the overwhelming evidence to the effect that bells were ringing, the whistle blown, the lights flashing, of the lack of any obstruction down the track, plus the clear view which plaintiffs had of the approaching train for at from 5 to 10 seconds, the contention is completely without merit.

2. *Instructions Refused.*

It was plaintiffs' theory as alleged in their amended complaint that defendant city's liability was under the Public

Liability Act, in that Goodwin, acting within the course and scope of his employment, directed the Akers' automobile into the path of the oncoming train, thereby creating a dangerous and defective condition. The court gave a short instruction as to what the Public Liability Act provides. Plaintiffs offered four instructions on the subject. Plaintiffs' instruction Number 8 states: "A defective or dangerous condition can be created by the use or general plan of operation of government operated property as well as by structural defect." The instruction is based upon *Bauman* v. *City & County of San Francisco* (1940), 42 Cal.App.2d 144 [108 P.2d 989], where the plaintiff playing in a sand box in the defendant's playground was injured by a baseball batted by some boys playing nearby.

Plaintiffs' instruction Number 9 is to the effect that where a condition inherently dangerous or defective has been created through the carrying out of a plan adopted or authorized by the city or an officer thereof, no further proof of that fact is needed to charge the city with notice of the condition. This instruction is based on *Wise* v. *City of Los Angeles* (1935), 9 Cal.App.2d 364 [49 P.2d 1122, 50 P.2d 1079], and *Irvin* v. *Padelford* (1954), 127 Cal.App.2d 135 [273 P.2d 539].

Plaintiffs' instruction Number 10 is a lengthy instruction taken practically verbatim from *Irvin* v. *Padelford, supra,* page 143, and is primarily to the effect that in determining whether the acts of the city made the crossing a dangerous one, the use to which the crossing was intended to be put should be considered, and that although property may be free from structural defects and safe for certain acts, it may be dangerous for another kind of use.

Plaintiffs' instruction Number 11 reads: "Where the person authorized to remedy the dangerous condition has notice in advance that because of the manner in which the work is done a dangerous condition will probably occur and takes no steps to remedy it, the conditions of liability of the Public Liability Act are satisfied." This instruction is based on *Teilhet* v. *County of Santa Clara* (1957), 149 Cal.App.2d 305, [308 P.2d 356], where the county in burning brush adjacent to the highway by filling the highway with smoke created a dangerous condition.

The court properly refused all four instructions on the ground that there was no evidence to support them. ▉ "Even though an instruction is couched in proper language it is improper, if it finds no support in the evidence,

and the giving of it constitutes prejudicial error if it is calculated to mislead the jury." (*Davenport* v. *Stratton* (1944), 24 Cal.2d 232, 254 [149 P.2d 4].)　▆▆　As said in *Bauman* v. *City & County of San Francisco, supra,* 42 Cal.App.2d at page 153, "It has frequently been stated that no hard-and-fast rule can be laid down as to what constitutes a dangerous or defective condition, but that each case must depend upon its own state of facts. [Citations.]　▆▆　It is also well-settled that as a general rule it is a question of fact for the jury to determine whether a given set of facts or circumstances creates a dangerous or defective condition."

▆▆　However, where there are no facts or circumstances which would justify a jury in finding the existence of a dangerous or defective condition, it is the duty of this court to hold that no such condition existed. Such is the situation here. It would be absurd to hold that directing traffic at a railroad crossing to the side of the street opposite to that normally used constituted a defective or dangerous condition under the Public Liability Act, even though on that side of the street there is no gate at the railroad crossing. The crossing was protected by a gate on the easterly side of the tracks which was a barrier to westbound traffic (the direction in which plaintiffs were driving) and a gate on the westerly side of the crossing barring eastbound traffic. As plaintiffs were directed by Goodwin to the southerly side of the avenue there was no gate between them and the tracks. However, they necessarily could see the gate on their side of the tracks right in front of them, and directly in front of them was the gate on the opposite side of the tracks. Moreover, the standard supporting the gates, both of which were clearly visible to the plaintiffs, were equipped with a gong and four flashing red lights, two of which faced in each direction. The gates were also each equipped with three red lights in either direction, two of which were flashing and one continuously burning. In addition, there was a gong.

It would be unreasonable to hold that temporarily routing traffic on the other side of the street, where the motorist is faced not only with the sight of the tracks themselves, but with all these protective devices, constituted the creation of a dangerous or defective condition. If as the doctor testified Goodwin waved him to proceed into the oncoming train, such act would be negligence, but it would not be the creation by the city of a dangerous and defective condition under the Public Liability Act, any more than the negligent driving of

a vehicle by a city employee would make the city liable under the Public Liability Act.

None of the cases cited by plaintiffs are in point. In *Wise* v. *City of Los Angeles, supra,* 9 Cal.App.2d 364, the city employees dug a hole in one of the defendant's streets and left it for a period of four days. The court held that the digging of a hole in a public highway is inherently dangerous. Obviously detouring traffic as here was in nowise inherently dangerous, even if Goodwin's act in waving plaintiffs on was a dangerous act. *Pritchard* v. *Sully-Miller Contracting Co.* (1960), 178 Cal.App.2d 246 [2 Cal.Rptr. 830], dealt with a dangerous condition brought about by the city of Long Beach's deliberately setting the traffic signals at an intersection with an eight-second delay in favor of eastbound traffic. As before stated, *Bauman* v. *City & County of San Francisco, supra,* 42 Cal.App.2d 144, 153, dealt with a dangerous condition brought about by maintaining a sand box for small children in too close proximity to an area where baseball was played. In *Irvin* v. *Padelford, supra,* 127 Cal.App.2d 135, the city of Pomona had removed a stop sign at the intersection of one of its streets with an arterial highway. The court held the operation of an arterial highway intersection without a stop sign constituted a dangerous condition. *Teilhet* v. *County of Santa Clara, supra,* 149 Cal.App.2d 305, dealt with a dangerous condition caused by the county's burning rubbish along the highway and thereby causing the highway to be so obscured by smoke as to make it dangerous to traffic. *Plaza* v. *City of San Mateo* (1954), 123 Cal.App.2d 103 [266 P.2d 523], dealt with a situation in which the plaintiff while in the parking lot of the city's golf course was injured by a golf ball driven from the golf course. The reviewing court was considering the sufficiency of the complaint as against a demurrer. The court pointed out that the complaint alleged a defective and dangerous condition of the golf course in that there was no protection to persons in the parking area from golf balls from the course itself and that were it alleged that this condition was the proximate cause of the plaintiff's injury, a cause of action against the city would be stated.

In all the cited cases the dangerous or defective condition brought about by the municipality or county was the proximate cause of the injury. In our case the proximate cause of plaintiffs' injuries was not the condition brought about by the city, namely, detouring traffic to the other side of the street. There was nothing basically unreasonable or dangerous

in closing one side of the street at the intersection nor was it reasonably foreseeable that a motorist would blindly drive his car onto the railroad tracks in view of all the circumstances to sight and hearing existing there. It was the act of Goodwin waving plaintiffs into the oncoming train (if Goodwin did so) that was the basic cause of the injury.

The fact that it was the city's general custom to utilize a flagman on the paint truck for the purpose of directing or diverting traffic, and that no instructions were given to Goodwin other than to flag the traffic around the work being done, and no rules or regulations on the subject had been promulgated by the city, in no way made such action a "dangerous or defective condition of public property." (Gov. Code, § 53051.)

*Farrell* v. *City of Long Beach* (1955), 132 Cal.App.2d 818 [283 P.2d 296], dealt with conditions more nearly similar to those in our case than were the conditions in the above cases. There the complaint alleged that the plaintiff, a youth 12 years of age, while playing at the city's playground was directed by the city's agent to ride upon the handle bars of the bicycle of another boy and was thereby injured. The court pointed out that no dangerous or defective condition of the playground was alleged and that hence there was no cause of action under the Public Liability Act alleged.

As we stated in *Behr* v. *County of Santa Cruz* (1959), 172 Cal.App.2d 697, 712 [342 P.2d 987], it is not enough to establish liability under the Public Liability Act to prove negligence of a public body or its employees. The injury for which recovery is sought must be the proximate result of a dangerous or defective condition.

The railroad tracks were themselves a warning of danger, and applicable here is the following from *Boots* v. *Potter* (1954), 122 Cal.App.2d 927, 933 [266 P.2d 176, 39 A.L.R.2d 1]: "No case has been called to our attention and we have found none which goes so far as to hold that a motorist can completely and absolutely rely upon the directions of a flagman working on a construction job and be relieved entirely of the duty to otherwise use care for his own safety."

Plaintiffs contend that the court should have clarified the instruction it gave on the Public Liability Act, when on two occasions the jury returned from the jury room and asked for further instruction on the subject. Were there evidence to support even the instruction which the court gave, the court would have been required to have given further explanation

to the jury. However, as we have pointed out, there was no evidence upon which liability could be established under the Public Liability Act; therefore, the court did not err. Actually, because of lack of evidence, the court should have taken from the jury the issue of liability upon the part of the city.

*Presumption of Due Care.*

The court properly refused to give the proffered instruction to the effect that it must be presumed that Dr. Akers was using due care at the time of the accident. The two eyewitnesses produced by plaintiffs, Van Donge and Ringressy, who were in a car immediately following that of plaintiffs' testified to the situation at the time of the accident. Mrs. Van Donge heard bells ringing, saw lights blinking, heard the train. She saw plaintiffs' car stop with a portion of the car on the tracks and remain in that position for more than 10 seconds before being struck. Miss Ringressy likewise testified to the ringing of bells. They rang for 15 to 20 seconds before the impact. She heard the train horn immediately after the signal bells began to ring. The traffic gates were dropping. Mrs. Van Donge backed her car to give plaintiffs room to back their car off the track where it then was, but the car remained there for at least five seconds. The testimony of these two witnesess called by plaintiffs is wholly irreconcilable with the presumption that Dr. Akers exercised due care.

"It is the established rule that when satisfactory proof concerning a fact is wholly irreconcilable with that presumption [the presumption of due care provided by Code Civ. Proc., § 1963, subd. 4] 'the latter is dispelled and disappears from the case.' " (*Levin* v. *Brown* (1947), 81 Cal. App.2d 913, 917 [185 P.2d 329]; *Heintz* v. *Southern Pacific Co.* (1944), 63 Cal.App.2d 699, 706 [147 P.2d 621].) In *Heintz,* the court held that the presumption could not apply to a driver approaching a fruit car standing on a main street as "the fruit car was visible and should have been seen by any driver who was exercising any care at all." (P. 707.)

In our case, the tracks and the warning devices could be seen and the bells and train horn could have been heard by Dr. Akers if exercising any care at all.

In *Morris* v. *Purity Sausage Co.,* 2 Cal.App.2d 536 [38 P.2d 193], the plaintiff, a pedestrian, left a crosswalk to walk around an automobile which blocked her way. The plaintiff testified that she could not recall anything that happened after she left the pedestrian lane and passed to the rear of

the obstructing car. It was held that the trial court properly refused to instruct on the presumption of due care, in view of the fact that the evidence of the plaintiff and her only witness to the accident was inconsistent with the presumption and disclosed her negligence.

The latest expressions of the rule are in *Williams* v. *Pacific Gas & Elec. Co.* (1960), 181 Cal.App.2d 691, 703 [5 Cal.Rptr. 585]; *Crago* v. *Pacific Motor Trucking Co.* (1960), 178 Cal. App.2d 751 [3 Cal.Rptr. 183]; and in *Gigliotti* v. *Nunes* (1955), 45 Cal.2d 85, 93 [286 P.2d 809], where it is stated, in effect, that where the driver's witnesses testify as to the acts and conduct of the driver, the only exception to the rule that there is no room for the presumption that the driver used due care, occurs where there are circumstances which afford an indication that the testimony is the product of mistake or inadvertence and is wholly irreconcilable with the presumption sought to be invoked. The circumstances in our case afford no ground for applying the exception.

*Instructions Applicable to Southern Pacific Alone.*

 Plaintiffs offered certain instructions which were refused. Plaintiffs' instruction Number 12 was to the effect that compliance with Public Utilities Code standards does not necessarily fulfill the duty to exercise reasonable care. The court instructed: "Section 7604 of the Public Utilities Code, which has just been read to you, constitutes a statutory measure of care required of a railroad but it is a matter for your sound judgment to determine from all the evidence whether the railroad personnel did all that a reasonably prudent railroad operator would have done under like circumstances." Moreover, there was no testimony as to what standards the Public Utilities Code had established. In view of this fact (see *Riley* v. *Davis*, 57 Cal.App. 477 [207 P. 699]), and particularly of the instruction that was given, there was no error in the refusal of plaintiffs' instruction Number 12.

Plaintiff's instruction Number 14 dealing with speed of the train, view of the crossing being obstructed and failure to warn of the approach of the train, finds no support in the evidence.

 Plaintiffs' instruction Number 15 to the effect that the Southern Pacific did not have an exclusive right to operate cars across the public streets conflicts in its form with the ruling in *Nemer* v. *Atchison, T. & S. F. Ry. Co.*, 156 Cal.App. 2d 445, 451 [319 P.2d 770]: "The law recognizes that a railroad grade crossing is a place of danger (*Eastman* v.

*Atchison, T. & S. F. Ry. Co.*, 51 Cal.App.2d 653 [125 P.2d 564]), and that a train has the right of way (*Koster* v. *Southern Pac. Co.*, 207 Cal. 753 [279 P. 788].) The train crew in the present case had a right to assume that the plaintiff possessed normal faculties of sight and hearing, and could see and hear the signals and see the approaching train. (*Martindale* v. *Atchison, T. & S. F. Ry. Co.*, 89 Cal.App.2d 400 [201 P.2d 48].)'' To instruct baldly without qualification that a railroad does not have exclusive right to use a crossing would under the circumstances of this case have been error. Moreover, there was no issue in the case concerning exclusive use of the crossing.

Plaintiffs' instruction Number 17 is to the effect that the railroad must pass over "dangerous crossings" at a speed proportionate to the danger, and that where the conditions at the crossing create an unusual hazard the railroad must exercise care commensurate with the hazard. Under the circumstances of this case this instruction is misleading. If the crossing was a dangerous one and there was an unusual hazard, this situation was due to the acts of the city, and there is no evidence that the railroad knew of such conditions. The evidence affirmatively discloses that the railroad was given no notice by the city of its work at the crossing. To indicate that the railroad should have taken precautions additional to those usual at crossings protected as this one was, because of an alleged condition unknown to it, would have been improper.

*Herrera* v. *Southern Pacific Co.* (1957), 155 Cal.App.2d 781 [318 P.2d 784], relied upon by plaintiffs, which holds that where the conditions at a crossing create an unusual hazard or danger, the speed of a train at a crossing must be reasonable considering the conditions at the crossing, is not contrary to our holding here. In the Herrera case there were five sets of tracks at the crossing. The automatic signal did not start until Herrera's truck was on the third track. It stalled there. Due to the curving of the track, an ice company's loading dock and freight cars standing beside it, the view of the crossing by the engine's crew was obstructed. A speed limit of 25 miles per hour was posted for freight trains. The train approached the crossing at 36 miles per hour, with increasing speed. While there were automatic signals at the crossing there were no gates, as here. The vice of plaintiffs' instruction Number 17 is that while it states

correctly the rule of the Herrera case, as applied to the circumstances of this case, without qualification it is extremely confusing, as the hazard at this crossing, contrary to the situation in the Herrera case, was an unusual one, and one not known to defendant Southern Pacific nor one reasonably foreseeable by it.

Plaintiffs' instruction Number 18 to the effect that the character of the crossing affects the duty of the railroad as to speed at the crossing is in the same category as Number 17.

The court, in addition to instructing as above stated that the jury was to use its judgment in determining whether the operation of the train under the circumstances was reasonable, instructed with respect to ordinary and reasonable care.

The court refused to give a proffered instruction on the doctrine of imminent peril. Plaintiffs practically concede that this instruction would be proper only if they were entitled to an instruction on the presumption of due care. As they are not, there is no evidence which would justify the giving of this instruction. There was no error in the refusal of the proffered instructions.

### 3. *The Muskopf Case not Applicable.*

Since the trial of the instant case, *Muskopf* v. *Corning Hospital Dist.*, 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], was decided, in which it was held that "the rule of governmental immunity from tort liability . . . must be discarded as mistaken and unjust." (P. 213.) In our opinion *Muskopf* has no effect upon the Public Liability Act. That case abandoned a court made rule of immunity. It does not thereby amend or repeal a statute in which the Legislature has waived immunity, subject, however, to certain conditions. In *Kotronakis* v. *City & County of San Francisco,* 192 Cal.App.2d 624 [13 Cal.Rptr. 709], and *Ngim* v. *City & County of San Francisco,* 193 Cal.App.2d 138 [13 Cal. Rptr. 849], we held that *Muskopf* did not alter or amend the Public Liability Act and that in actions brought under that act the evidence must meet the conditions prescribed in the act. The pleadings in our case were framed, the case tried and submitted to the jury, on the theory of the Public Liability Act, not upon any theory of general liability of the city for negligence. It is too late now to proceed on a new and different theory. Further, any general negligence theory would depend upon an act of negligence on the part of Goodwin, under the doctrine of respondeat superior. As

the jury cleared Goodwin of any negligence, Merca and the city are likewise absolved of any negligence. (*Cooke* v. *Stevens* (1961), 191 Cal.App.2d 457, 459 [12 Cal.Rptr. 828] ; *Hendriksen* v. *Young Men's Christian Assn.* (1959), 173 Cal.App.2d 764, 769-770 [344 P.2d 77].)

The judgment is affirmed.

Tobriner, J., and Duniway, J., concurred.