**Marlon LOYD, Plaintiff-Appellant,**

v.

**Louis LEVIN and June Levin, Defendants-Respondents.**

**No. 32490.**

St. Louis Court of Appeals.

Missouri.

March 21, 1967.

James W. Jeans, Gregg W. Keegan, St. Louis, for plaintiff-appellant.

Holtkamp & Amelung, Eugene S. Heitman, St. Louis, for defendants-respondents.

BRADY, Commissioner.

Plaintiff received a jury verdict in the amount of $3,000.00 in her action for damages wherein she alleged defendants' negligence in failing to remove ice and snow from a common walkway. Following the verdict the trial court sustained defendants' motion for judgment in accordance with their motion for directed verdict offered at the close of all the evidence. Plaintiff appeals.

Among the other difficulties in ascertaining exactly what happened in this case is the fact that both counsel insisted upon using the words "here" and "there" and "right here" and "this point" when they were referring to the place plaintiff fell. It is obvious that they were pointing to a place on an exhibit but as this court stated in Armstrong v. Westroads Development Co., Mo.App., 380 S.W.2d 529, this manner of procedure, while helpful to the trial court or to the jury, fails to give this court any

information. There is no way we can ascertain where "here" and "there" actually were with reference to the physical surroundings. Counsel finally had the plaintiff mark on an exhibit the place where she fell. That would solve the problem were it not for the fact that this exhibit is not lodged in this court and we are informed it has been lost. In spite of this and other similar difficulties replete in this transcript we have ascertained the facts, taken in the light required of us by the verdict in favor of plaintiff, to present the following situation.

The following precipitations and temperatures existed in the St. Louis area on the days immediately preceding the plaintiff's fall and on the date of it. On December 7th a total of .24 inches of precipitation fell, there was a "trace" of snow, and there was no snow on the ground. On the 8th all that was noted was a trace except at 2:00 o'clock when there was a reading of .01 precipitation. There was a trace of snow that day and the maximum temperature was 37 degrees. Again there was no snow on the ground. On December 9th only a trace was noted at all readings with the exception of the 6:00 P.M. reading when .01 precipitation was noted. There was a trace of snow on the ground at 6:00 A.M. and the maximum temperature was 28 degrees. The same is true of the 10th except that at 6:00 P.M. there was .01 precipitation and .03 at midnight. There was a trace of snow on the ground at 6:00 A.M. On December 11th the readings introduced show that .30 inches of precipitation fell, that 4.3 inches of snow or sleet fell, and there was 1 inch of snow or sleet on the ground at 6:00 A.M. of that day. The maximum temperature was 28, the low was 24, and the average was 26. On the day of the accident, the 12th, there was no precipitation of any sort except for a "trace" noted at the readings taken at 9:00, 10:00, and 11:00 A.M. At 6:00 A.M. of that day there was 4 inches of snow and ice on the ground. The high was 25, the low 15, and the average temperature was 20 degrees.

The plaintiff fell between 10:30 and 11:00 of the morning of the 12th of December. She was a tenant in defendants' building. Her trash or garbage can was placed at the rear of a drive between the building in which she lived and the one next to it. As this drive came from the street toward the rear of the apartment building it was level or approximately so until it reached a point even with the rear door of the last apartment in the building when it sloped downward for a distance of over ten feet. It then leveled out into what was described as sort of a courtyard. It was on this that the garbage pails were placed. The bottom of this slope was roughly seven feet from the garbage pails. The plaintiff's evidence was that the snow had drifted onto this driveway for several days and had melted and the accumulated water had frozen. It was bumpy and uneven as the result of people walking in it and then the footprints refreezing. It is undisputed that there had never been any attempt to remove this accumulation of snow nor to do anything else to make it more safe to walk upon. There was no definite path and people walked down the drive at any place along its width.

The plaintiff's petition alleged the carelessness and negligence of the defendants in failing to clean the walkway of the accumulation of snow. The plaintiff submitted her case on MAI 22.05 (Modified). In its parts pertinent to our decision that instruction reads: " 'INSTRUCTION NO. 2 Your verdict must be for plaintiff if you believe: First, there was an accumulation of ice covered by snow on the sloping driveway and as a result the driveway was not reasonably safe, and Second, defendants knew, or by using reasonable care should have known, of this condition, * * *.' "

Defendants' motion for judgment in accordance with their motion for a directed verdict offered at the close of all the evidence was based upon their contention there was a general snowfall in the area and thus they were not under a duty to remove

this snow from the common walkway. It was on this ground the trial court sustained the motion. There is no doubt but that this is the rule followed in this jurisdiction as to natural accumulations of snow. See 52 C.J.S. Landlord and Tenant § 417d, p. 46, quoted with approval by this court in Woodley v. Bush, Mo.App., 272 S.W.2d 833. Seeking to avoid the application of that rule to the factual situation here presented the plaintiff advances a novel argument. She does not deny the general snowfall covering this area prior to the plaintiff's fall and indeed, she could not, for such was her own evidence. Instead she urges two reasons why the rule is inapplicable to this case. First, she contends a sloping drive such as involved in this case constitutes an artificial condition. We need not rule upon this rather sweeping generalization. This for the reason that assuming, arguendo, the driveway constitutes such a condition, that fact alone is not sufficient to place a duty upon the defendants. The rule upon which plaintiff seeks to rely is that stated in Feld v. Frankel, Mo., 351 S.W.2d 755, l. c. 757, where, quoting with approval from 26 A.L.R.2d, l. c. 614, 620, it is said the landlord may be liable " * * * 'where the condition has arisen *artificially as a result of the landlord's negligence* in maintaining either the common passageway itself or some other part of the premises in a defective condition.'" (Emphasis supplied.) In Feld v. Frankel, supra, the sidewalk was depressed so that water was caused to collect and formed ice upon which the plaintiff slipped and fell. In the instant case the plaintiff never made any contention as to any negligence on the part of defendants except in failing to clean off the snow or otherwise make the walk safe. She neither alleged nor proved any negligence on the part of defendants in maintaining this driveway. It follows that what is here involved is not a " * * * condition (which) has arisen *artificially as a result of the landlord's negligence* in maintaining * * *" the common passageway. (Emphasis supplied.) Feld v. Frankel, supra.

The plaintiff then contends that, as stated in her brief, the question becomes " * * * did the accumulation of snow and ice Plus the steep slope, plus footprints, create a condition that was one that the landlord should have corrected." The plaintiff's brief fails to enlighten us as to precisely what is meant by this argument. If the plaintiff is urging that while separately or in other combinations the factors of snow, a slope, and footprints may not be sufficient, nevertheless when taken together they jointly created a situation where a duty arose requiring the defendants to take action, the fallacy of that argument is easily illustrated. These factors, when considered separately, are either not available to the plaintiff in this case, or they are insufficient to create a duty. As stated earlier, the existence of the snow is of no assistance to the plaintiff for the reason it resulted from a general condition existing throughout the area and thus would not create any duty on the part of defendants. The second factor upon which plaintiff relies is the slope of the passageway but again it is difficult to understand her argument in this regard. If she intends to urge this court to confine the rule relieving a landlord of responsibility for the removal of snow in the event of a general snowfall to level passageways, the answer to her argument is that we find no precedent for doing so in the cases out of which the rule arose. See the Annotation in 26 A.L.R.2d at 610. Neither does the plaintiff suggest any good reason for such a limitation nor can we perceive of any. On the other hand, if plaintiff is attempting to urge the degree of steepness of the slope as a reason for a duty being placed on the defendants, several answers immediately suggest themselves. We will confine ourselves to only one. It is that this argument begs the question. The measures employed by a landlord to make safe a steep slope may necessarily increase with the steepness of the slope. That is to say, measures that might be found ordinary care in making a level walk safe might well be insufficient to meet that standard when attempting to make a steep walk safe. But that argument pre-

supposes the establishment of the duty to make the walkway safe regardless of the degree of its slope and it is with that issue we are here concerned. Until that duty is established we need not concern ourselves with this facet of plaintiff's argument.

The plaintiff then argues the existence of "footprints" as one of the reasons why, all these things taken together, defendants had a duty to remove this snow or to use ordinary care to make travel upon it safe. The simple answer to this contention is to be found in plaintiff's petition and in the instruction upon which she submitted her case. She has never contended that she was caused to fall by tripping upon snow that had become hummocked or ridged by the thawing and re-freezing of travel through it. Her theory was that stated in her petition; i. e., the accumulation of snow on this common passageway. There was no proof as to her fall being caused by such a condition and neither did she submit her case upon that theory.

There are two other answers which, at the risk of unduly extending this opinion, should be stated. The rules regulating the duty of a landlord in the removal of snow are analogous to and in fact developed coextensively with those governing the duty of a municipality as to the removal of snow from the sidewalks. See Walsh v. City of St. Louis, 346 Mo. 571, 142 S.W.2d 465; Harding v. City of St. Joseph, 222 Mo. App. 749, 7 S.W.2d 707; and Reno v. St. Joseph, 169 Mo. 642, 70 S.W. 123. In Gudorp v. City of St. Louis, Mo.App., 372 S. W.2d 483, this court, quoting from Reno v. St. Joseph, supra, recited the rule as follows: " '* * * Or when snow and ice are permitted to accumulate upon a sidewalk of a city, and are permitted to remain there until by thawing and freezing they become an obstruction, and the sidewalk unsafe for travel, and the city has knowledge thereof for a sufficient length of time before an accident and injury occurs to one traveling thereon in the exercise of ordinary care, to remove the obstruction, and fails to do so, it will be held to respond in damages for the injury. * * *' " However, an examination of the cases in which such a rule is applied will illustrate that a general accumulation of ice or snow was not involved. What was involved was a specific or isolated area, as in Gudorp v. City of St. Louis, supra, where the snow or ice did not melt, or where there was a water discharge from a drain, or similar cause for an isolated condition. There is yet another reason why the existence of these footprints is of no assistance to the plaintiff. It is that in those instances in which footprints or tire marks or other things of that nature are relied on, the theory is that they have caused "ridging" or "hummocking" so that an additional hazard has been added. As is illustrated in Gudorp v. City of St. Louis, supra, the rule is that there must be notice to the city or to the landlord, and following that notice there must be evidence of a lapse of a sufficient length of time in which the jury could reasonably find that the landlord or city would have had time to remove this hummocked or ridged ice or snow. Examples of this type of case may be found in 26 A.L.R.2d, 1. c. 618, 619, [§ 3]. Even in those jurisdictions which do not follow a rule similar to ours and which recognize a duty on the landlord's part to remove snow on a common passageway resulting from a general condition throughout the area it is necessary to prove notice to the landlord and a reasonable opportunity to correct the situation. Certainly there would be such a requirement in this case even if we were to adopt plaintiff's theory as to these footprints. In the instant case there is no evidence from which the jury might find how long the ridging or hummocking of the snow had existed in order to determine whether the landlord had knowledge of that condition for a sufficient length of time to remove this condition. See 26 A.L.R.2d, p. 633, § 8. It follows that plaintiff must fail in her argument the snow, the steepness of the slope, and the existence of the footprints combined to create a situation where a duty arose upon the defendants to remove this accumulated snow. These facts are either

unavailable to her under her own pleadings, proof, and the manner of submission of her case, or of no assistance to her under our rule as to accumulated snow resulting from a general snowfall in the area.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by BRADY, C., is adopted as the opinion of the court. The judgment is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.