146 N.J. Super. 149 (1976)
369 A.2d 38
RITA ATAMIAN AND PAUL ATAMIAN, HER HUSBAND, PLAINTIFFS,
v.
SUPERMARKETS GENERAL CORP., A CORPORATION OF THE STATE OF NEW JERSEY, AND CAPRI HAIR FASHIONS OF WILLOWBROOK, A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided November 29, 1976.
*151 Mr. Frank M. Donato for plaintiffs (Messrs. Donato & Donato, attorneys).
Mr. Jeffrey M. Kadish for defendants (Messrs. Morgan, Melhuish, Monaghan & Spielvogel, attorneys).
*152 DOAN, J.S.C., Temporarily Assigned.
In this action plaintiff alleges, among other matters, that after shopping in defendants' supermarket and while she was about to enter her car in defendants' open and somewhat darkened parking lot, she was assaulted and raped by three unknown assailants.
Plaintiffs charge that defendants were under a duty to take measures to guard against such criminal activity by providing security measures such as adequate security guards, lights and fencing. Defendants move to dismiss this allegation as an issue in the case, contending that the same cannot support a cause of action.
In an earlier proceeding in this cause a similar motion by defendants for partial summary judgment was denied. The present application appears to represent a reargument of the same issue. A brief outline of the facts is indicated.
On January 2, 1975 plaintiff was an invitee at the Pathmark supermarket located at Paulison and Clifton Avenues in Clifton, New Jersey. The premises are owned by defendant Capri Hair Fashions of Willowbrook and leased to defendant Supermarkets General Corporation. Plaintiff alleges that at about 5 P.M. she was assaulted and raped in the parking lot immediately adjacent to the supermarket. She had just returned to her car from shopping and was loading her groceries when attacked by three unknown assailants. She alleges that immediately prior to this assault at least five people were attacked in defendants' parking lot, as reflected in police reports. Plaintiff also alleges that in light of these incidents defendants were under a duty to take security measures, such as providing adequate lighting, fencing, and security guards to protect customers against such criminal activities on the premises. Defendants concede that a cause of action is presented by the allegation of inadequate lighting, but reject plaintiff's contention that a duty to provide security guards, fencing or other security measures existed. Defendants did in fact provide security *153 guards on a limited nightly basis, but no guards were on duty at the time of this incident.

I
Although plaintiff urges that defendants' present motion should be barred by principles of collateral estoppel and estoppel by judgment, present consideration will assume that presentation of this motion is proper in order to reach the question of whether the court's previous determination of the existence of a duty should be modified in light of defendants' cumulative arguments.
In support of their motion to dismiss the allegations relating to their failure to take security measures defendants argue that "there is no legal duty upon the owner or lessee of premises to invitees to provide police protection or any other security measures, such as fencing, against criminal activity." Although they concede that there are exceptions to the general rule of "no duty" where special relationships and/or special circumstances exist, defendants deny that the present facts qualify as an exception. Besides arguing that defendants' knowledge of prior criminal assaults on the premises as well as their partial employment of security guards do indeed create an exception to the general "no duty" rule, plaintiff asserts the broader principle that "a proprietor of premises which are open to the public has a duty of reasonable care to see that those who enter the premises have a reasonably safe place to do that which is within the scope of their invitation," which can include taking reasonable security measures.
It is well established that the proprietor of premises to which the public is invited for business purposes owes a duty of reasonable care to see that its invitees have a reasonably safe place to do that which is within the scope of their invitation. Genovay v. Fox, 50 N.J. Super. 538, 549 (App. Div. 1958), rev'd on other grounds 29 N.J. 436 (1959); Crammer v. Willston Operating Co., Inc., 19 N.J. Super. 489 *154 (App. Div. 1952). It is similarly well established that in the absence of a special relationship between the parties and/or special circumstances, there is no duty on a proprietor of business to protect its invitees against the criminal acts of third parties. Genovay v. Fox, supra; Annotation, "Private Person's Duty and Liability for Failure to Protect Another Against Criminal Attack by Third Person," 10 A.L.R.3d 619. As to what constitutes "special relationships" and/or "special circumstances" sufficient to remove a given situation from the general "no duty" rule, various cases have been cited by the parties. Among the special relationships giving rise to the duty to take protective measures are common carrier/passenger and landlord/tenant. As to common carriers, see Exton v. Central R.R. Co., 62 N.J.L. 7 (Sup. Ct. 1898), aff'd 63 N.J.L. 356 (E. & A. 1899) (holding that defendant owed a duty to take reasonable precautions to protect its passengers from injury caused by recurrent scuffling by cabmen in the walkway of its railroad depot); and Neering v. Illinois Central R.R. Co., 383 Ill. 366, 50 N.E.2d 497 (Sup. Ct. 1943), mandate conformed 321 Ill. App. 625, 53 N.E.2d 271 (holding that defendant owed its patrons a duty to take precautions against the commission of unlawful acts by those it permitted to congregate about its station). As to landlord/tenant, see Braitman v. Overlook Terrace Corp., 68 N.J. 368, (1975) (imposing liability for property loss by theft resulting from a landlord's failure, despite notice, to supply adequate locks for the protection of the tenants), and Kline v. 1500 Massachusetts Avenue Apartment Corp., 141 U.S. App. D.C. 370, 439 F.2d 477 (D.C. Cir. (1970) (permitting recovery by a tenant for injuries suffered in an assault by an intruder attributable to inadequate security measures by the landlord); cf. Goldberg v. Newark Housing Auth., 38 N.J. 578 (1962) (holding landlord housing authority owed no duty to provide police protection to a milkman assaulted on defendant's premises while making a delivery, evidence of prior criminal occurrences notwithstanding).
*155 Consideration of whether "special circumstances" were presented so as to provide an exception to the general "no duty" rule has occurred in numerous cases involving the owner or operator of business premises and his invitee. In Genovay v. Fox, supra, 50 N.J. Super. 538, the Appellate Division denied recovery to an invitee who sustained injuries from an unknown assailant during a robbery of defendant's premises. Defendant, the proprietor of a late night tavern/bowling alley, was held to owe no duty to provide a security alarm system for the protection of his customers notwithstanding a general increase in crime in the area. Cornpropst v. Sloan, 528 S.W.2d 188 (Tenn. Sup. Ct. 1975), denied recovery to a female shopper for injuries sustained from an unknown assailant in defendants' parking lot. Defendants owner and operator of a shopping center were held to owe no duty to protect invitees against sudden and unforeseeable criminal acts by unidentified third parties. A similar result was reached in Davis v. Allied Supermarkets Inc., 547 P.2d 963 (Okl. Sup. Ct. 1976). In Dwyer v. Erie Investment Co., 138 N.J. Super. 93 (App. Div. 1975), recovery was denied to a subcontractor shot by an unknown trespasser while working on defendant's premises. In spite of defendant's notice of a hole permitting unauthorized access to the premises and a high area crime rate, no duty to protect against criminal acts by third parties was held to exist. Crammer v. Willston Operating Co., Inc., 19 N.J. Super. 489 (App. Div. 1952), granted recovery to a roller skater who sustained injuries when knocked to the ground by another skater who rapidly skated between plaintiff and her skating partner. Since earlier incidents of "rowdyism" had occurred that night in the crowded rink, defendant proprietor was held to owe a duty to take security measures, including additional guards, for the protection of its invitees. Finally, in Picco v. Fords Diner, Inc., 113 N.J. Super. 465 (App. Div. 1971), it was held that defendant diner owed a duty to its patrons to use reasonable means of protection against assaults in its parking lot by *156 unknown persons, by the use of night illumination to deter criminal activity. It is thus apparent from the cited cases that imposition of a duty to take reasonable precautions to protect invitees against the criminal acts of third parties has occurred in diverse factual settings, each requiring careful consideration of the particular facts presented.
Determination of whether a duty exists to protect invitees against the criminal acts of third parties is ultimately a question of fairness. Goldberg v. Newark Housing Auth., 38 N.J. 578 (1962). Elements to be considered in this determination are foreseeability, the relationship of the parties, the nature of the risk, the public interest and proximate cause. At 583.
As to foreseeability, the fact that the risk of harm to plaintiff was attributable to the voluntary criminal activity of a third party does not of itself preclude defendants' liability. Genovay v. Fox, 50 N.J. Super. 538, 550; Restatement, Torts 2d, § 344. Liability might still be imposed where a defendant's conduct created circumstances in which the possibility or likelihood of criminal attack could reasonably have been foreseen or anticipated. 10 A.L.R.3d 619, 643. Presently, there is evidence, when viewed in a light most favorable to plaintiff, that indicates that at least five previous assaults had occurred on defendants' premises immediately prior to the incident involving plaintiff. There is also evidence that defendants employed the use of security guards on a limited nightly basis, thus indicating an awareness of the potential for criminal activity in its parking lot. Further, there was inadequate lighting. These circumstances compel the conclusion that a possibility or likelihood of continued criminal attacks on invitees reasonably could have or should have been foreseen by defendants. Cf. Cornpropst v. Sloan and Davis v. Allied Supermarkets Inc., supra.
Turning next to the relationship of the parties, it appears that plaintiff was a regular shopper at the Pathmark in question and conferred economic benefits on defendants with each *157 visit. There is evidence that defendants' patrons are comprised largely of unescorted women who engage in cash transactions. It is also apparent that defendants had sole control over the remote parking lot area and they alone appear to have knowledge that previous assaults had occurred. When taken along with the inference that the limited presence of security guards on the premises may have created among shoppers an impression of safety-supervised premises, these factors establish that defendants were in a far superior position to guard against the criminal attacks of third parties.
As to whether the duty sought to be imposed by plaintiff comports with the notion of fairness, defendants raise the objection that the proposed duty to take reasonable security measures to protect invitees against criminal attacks by third parties is indefensibly vague, citing Goldberg v. Newark Housing Auth., supra. "Fairness," according to the Goldberg case, "requires that a man be able to ascertain in advance of a jury's verdict whether the duty is his and whether he has performed it." In that case the court refused to recognize that defendant housing authority owed a duty to provide police protection on its premises. The furnishing of such police protection was a function of government. Imposition of such a duty was said to be unfair also because of vagueness as to what buildings it would extend; what number, kind and location of offenses would be necessary to give rise to the duty; and to what measures or standard of performance would satisfy the duty. 38 N.J. at 589-590.
Unlike Goldberg, however, the present objection of an "unreasonably vague" duty is unpersuasive. The proposed duty to require defendants to provide reasonable security measures to protect patrons against the criminal attacks of third parties on their premises stands in glaring contrast to the duty sought to be imposed in Goldberg. Here the physical area involved consists of a single parking lot adjacent to defendants' supermarket, as opposed to a housing *158 project consisting of a complex of multi-level buildings housing some 6,000 people. Further, the reasonable security measures presently proposed as owing to plaintiff are not synonymous with providing police protection, as advanced in Goldberg. Here, the public policy argument inherent in the proposal of an independent housing authority police force is absent. Instead, reasonable security measures might well consist of a civilian security patrol, greater utilization of the security guards already used by defendants on a limited nightly basis, the use of closed circuit TV, establishment of a shopper escort service, or other measures as suggested by the professional security systems advisor's report submitted by plaintiff. Concededly, their remains some doubt as to the precise number, kind and location of criminal acts necessary to give rise to the proposed duty. Rather than attempt to define these points with exactitude it need only be said that evidence of five similar occurrences on defendants' premises immediately prior to the present incident was sufficient to give rise to the proposed duty.
Final consideration must now be given defendants' argument that the cases cited to the court, particularly Cornpropst v. Sloan, supra, 528 S.W.2d 188, compel the finding that the instant case does not present the "special relationships" or "special circumstances" necessary to provide an exception to the general "no duty" rule. Defendants contend that since one of the traditional special relationships, such as common carrier/passenger or innkeeper/guest, is not presented, and since the criminal attack on plaintiff was sudden, unexpected and committed by unidentified assailants, the limited exceptions of the general rule preclude defendants' liability. So restrictive an approach to the recognition of duty was clearly rejected by the Supreme Court in Goldberg, with its elevation of "fairness" as the ultimate question. Thus, even if the rule as stated in Cornpropst were applied to the instant facts, that
* * * there is no duty upon the owners or operators of a shopping center * * * whose mode of operation of their premises does not *159 attract or provide a climate for crime, to guard against the criminal acts of a third party, unless they know or have reason to know that acts are occurring or about to occur on the premises that pose imminent probability of harm to an invitee; whereupon a duty of reasonable care to protect against such act arises * * * [emphasis supplied]
fairness would still require imposition of the proposed duty.
Rejection must similarly be made of defendant's argument that failure to take reasonable security measures, assuming such a duty existed, was not the proximate cause of plaintiff's injuries. It was noted earlier that the intervening criminal attack of a third party does not necessarily constitute a break in the chain of causation, 10 A.L.R.3d 619, 648, and that the continued probability or likelihood of criminal attacks on defendants' premises was reasonably foreseeable. Since additional criminal attacks should have been anticipated, it is not unreasonable to infer that reasonable security measures would have served as a deterrent and that defendants' failure to take such measure constituted a substantial factor in the assault on plaintiff. Crammer v. Willston Operating Co., Inc., 19 N.J. Super. 489 (App. Div. 1952); Lee v. Nat'l League Baseball Club of Milwaukee, 4 Wis.2d 168, 89 N.W.2d 811 (Sup. Ct. 1958).
On the basis of the particular facts in this case a jury question is presented as to whether defendants discharged their duty to take reasonable security measures for the protection of their patrons.
Defendants' motion to strike this allegation as an issue in the case is denied.