Katherine Irene TWENTE, Appellant,

v.

**ELLIS FISCHEL STATE CANCER HOSPITAL, and Missouri Department of Social Services, and Missouri Division of Health, Respondents.**

**No. WD 34067.**

Missouri Court of Appeals,
Western District.

Dec. 13, 1983.

Motion for Transfer to Supreme Court Denied Jan. 31, 1984.

J. William Turley of Wesner, Turley & Kempton, Inc., Sedalia, for appellant.

John Ashcroft, Atty. Gen., Scott A. Woodruff, Asst. Atty. Gen., Jefferson City, for respondents.

Before MANFORD, P.J., and SOMERVILLE and KENNEDY, JJ.

MANFORD, Presiding Judge.

This is an original action seeking recovery of damages for personal injuries. The trial court dismissed the petition. This appeal from that dismissal is made pursuant to § 512.020, RSMo 1978. The judgment dismissing the petition is affirmed.

Appellant's sole point charges the trial court erred in dismissing her petition for failure to state a cause of action, because her petition does state a cause of action against the defense of sovereign immunity, in that said petition pleads specific facts which bring her claim within the waiver or exception set forth in § 537.600(2), RSMo 1978.

In summary, the pertinent facts are as follows: On or about March 9, 1980, appellant Katherine Irene Twente was a nursing staff employee of respondent hospital. There is no dispute that respondent hospital is a functioning unit, and thus a part of the Missouri Division of Health, which in turn is within the Missouri Department of Social Services. The latter two are duly constituted political subdivisions of the state of Missouri. Between the hours of 11:00 and 11:30 p.m. on the above date, appellant completed her work schedule and proceeded to the south exit of respondent hospital. Her purpose was to leave the building and enter her automobile parked in the adjacent parking lot. There is no dispute that both the building and parking lot were owned and under the control of respondent hospital. For a period of time prior to the particular date, both appellant and respondents were aware of physical assaults and rapes upon employees and others on or near the parking area owned by respondent. As a result of these prior assaults and rapes, respondents had employed a security guard who was customarily stationed at the door where appellant exited. On the night in question, the security guard was not at the door and allegedly could not be located by appellant. Appel-

lant alleges that she left the building and as she approached her automobile in the parking lot, she was assaulted and raped by two assailants. Appellant charges that she sustained both physical and psychological injuries.

Appellant initiated this action, charging that her injuries were the direct and proximate result of the dangerous condition existing on respondents' property which caused foreseeable harm to her. In her petition, she further alleged that this dangerous condition resulted from and was created by the negligence of the security guard acting within the course and scope of his employment with respondent.

Respondents filed a motion to dismiss appellant's petition upon the theory that they were entitled to the benefit of the doctrine of sovereign immunity, and that the facts alleged in appellant's petition did not fall within the exception created by § 537.600(2), RSMo 1978. On April 12, 1982, the circuit court sustained respondents' motion to dismiss. This appeal followed.

As noted, appellant charges that the trial court erred in sustaining respondents' motion to dismiss, because as offered, her petition states a cause of action as against the defense of sovereign immunity in that her petition alleges specific facts which bring her claim within the waiver or exception prescribed by § 537.600(2), RSMo 1978.

In support of her contention, appellant references § 537.600(2), which reads as follows:

**"537.600. Sovereign immunity in effect—exceptions—waiver of**

Such sovereign or governmental tort immunity as existed at common law in this state prior to September 12, 1977, except to the extent waived, abrogated or modified by statutes in effect prior to that date, shall remain in full force and effect; except that, the immunity of the public entity from liability and suit for compensatory damages for negligent acts or omissions is hereby expressly waived in the following instances: ...

(2) Injuries caused by the condition of a public entity's property if the plaintiff establishes that the property was in dangerous condition at the time of the injury, that the injury directly resulted from the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of harm of the kind of injury which was incurred, and that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition or a public entity had actual or constructive notice of the dangerous condition in sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Appellant notes that no court in our state has specifically addressed the question presented by this case. By stipulation of the parties, the question is: "That the issue raised by this appeal is the applicability of the waiver of sovereign immunity under section 537.600 of the Missouri Revised Statutes, as amended, to the facts as stated in the Petition filed in this cause."

The pertinent portion of appellant's petition reads as follows:

5. That on that date, Plaintiff completed her usual and customary hours of work between 11:00 p.m. and 11:30 p.m.

6. That immediately upon completion of her duties, Plaintiff went to the middle exit on the South side of the Defendants' hospital premises and attempted to locate a guard who is the servant, agent and employee of Defendants, and who is customarily stationed at that door to guard against any assault upon persons coming into or leaving Defendants' premises from the parking lot located immediately adjacent thereto, but Plaintiff was unable to locate that guard.

7. That after repeated efforts to locate the aforementioned guard, Plaintiff exited the Defendants' building and walked toward her automobile located on Defendants' parking lot and when she reached that automobile, she was overpowered by two male persons who physi-

cally forced her into a 'van' type of automobile.

8. That while this Plaintiff was so confined, against her will, in that van, she was raped by each of two men and otherwise assaulted and battered and subjected to physical and mental abuse and other moral and physical outrages.

9. That for many months prior to the physical assault suffered by this Plaintiff, the Defendants knew, or in the exercise of ordinary care, should have known, that there existed a high possibility of physical assault and rape to employees and other persons on or near the parking lots owned by this Defendant because of a previous history of such assaults on or near the parking lots of these Defendants and other institutions operated by the State of Missouri and its agencies, in and around the City of Columbia, Missouri.

10. That the aforementioned assault, batteries and rapes occurred as the direct and proximate result of the negligence of these Defendants in the following particular respects:

a. In failing to provide a sufficient number of guards to cover the entire area of the Defendants' premises so as to prevent such physical abuse as was suffered by this Plaintiff, at a time when Defendants knew, or in exercise of ordinary care, should have known of the likelihood of such physical assaults;

b. In the failure of the guard who was, in fact, stationed at that door, and who was, at all times mentioned herein, the servant, agent and employee of the Defendants, and was acting within the course and scope of his employment with and by the Defendants, to remain at his post and thus prevent the acts of physical violence which were suffered by this Plaintiff and at a time when he knew, or should have known, of the likelihood of such physical assaults;

c. In the failure of the guard who was, in fact, stationed at that door, and who was, at all times mentioned herein, the servant, agent and employee of the Defendants, and was acting within the course and scope of his employment with and by the Defendants, to remain at his post and thus prevent the acts of physical violence which were suffered by this Plaintiff and at a time when he knew that it was his specific duty to guard against exactly such physical assaults as were suffered by this Plaintiff.

11. That all of Plaintiff's injuries, both physical and psychological, were caused by, and directly resulted from, the dangerous condition of Defendants' property; and that such dangerous condition and the potential for injury, of the very type Plaintiff suffered, were reasonably foreseeable and resulted from the negligent acts and omissions of Defendants' employees, within the course of such employment, as aforementioned herein; thus bringing Plaintiff's claim within the waiver of Sovereign or governmental tort immunity as set out at Section 537.-600(2) of the Revised Statutes of Missouri, as amended."

The above petition concludes with a prayer for damages.

Appellant's argument contends that her petition contains the necessary elements to state a claim under § 537.600(2), which she outlines as follows:

"(1) a *dangerous condition* on Defendants' property at the time of the Plaintiff's injury,

(2) a causal connection between such *dangerous condition* and the Plaintiff's injury,

(3) a reasonably foreseeable risk of the kind of injury suffered by Plaintiff resulting from such *dangerous condition;* and either

(4) a negligent act or omission of an employee of the public entity within the scope and course of his employment created the *dangerous condition;* or

(5) the public entity had actual or constructive notice of the *dangerous condition* in sufficient time prior to the Plaintiff's injury to have taken measures to protect against the *dangerous condition.*"

From the above, appellant concludes that this court must decide one single issue, to wit, "do the words 'dangerous condition' as used in section 537.600(2), RSMo exclude *as a matter of law,* an exposure of the plaintiff to intentional injury at the hands of another?"

To illustrate that her petition does state a cause of action, this court is asked to "assume" that exposure to injury by another is a "dangerous condition." Under the suggested "assumption", appellant is correct that the remainder of her petition would state a claim. This entire issue then turns upon, as correctly pointed out by appellant, whether her exposure by respondents to intentional injury by third persons is a "dangerous condition" as a matter of law within the meaning of § 537.600(2).

In support of her argument, appellant cites to this court *Loyd v. Levin,* 413 S.W.2d 540 (Mo.App.1967), and *Walsh v. City of St. Louis,* 346 Mo. 571, 142 S.W.2d 465 (1940), for the proposal (in appellant's words) of the "co-extensive nature of the liability of a governmental entity and a landlord's liability regarding the ownership and maintenance of land."

*Loyd* involved the setting aside of a plaintiff's verdict for personal injuries premised upon the defendant's alleged negligent removal of snow and ice from a common walkway. In *Loyd,* the court stated, "The rules regulating the duty of a landlord in the removal of snow are analogous to and in fact developed coextensively with those governing the duties of a municipality as to the removal of snow from the sidewalks." (citations omitted)

*Walsh,* a decision preceding the *Loyd* decision, addressed the liability of a municipality relative to a dangerous condition produced by snow accumulation upon a sidewalk area and a condition not common to general conditions throughout the remainder of the city. The rule in *Walsh* is that the municipality has the duty to exercise reasonable care to remedy the situation upon sufficient notice and with reasonable time to remedy the condition. Aside from the readoption of the rule of reasonable

care, *Walsh* does not address the "co-extensive" liability of a municipality and a private landlord.

To further her argument, appellant cites to RESTATEMENT (SECOND) OF PROPERTY § 17.3 and Comment L to said section, along with RESTATEMENT (SECOND) OF TORTS § 344 (Chapter 13). Those pertinent portions read as follows:

**"§ 17.3  Parts of Leased Property Retained in Landlord's Control Which Tenant Is Entitled to Use**

A landlord who leases a part of his property and retains in his own control any other part the tenant is entitled to use as appurtenant to the part leased to him, is subject to liability to his tenant and others lawfully upon the leased property with the consent of the tenant or a subtenant for physical harm caused by a dangerous condition upon that part of the leased property retained in the landlord's control, if the landlord by the exercise of reasonable care could have:

(1) discovered the condition and the unreasonable risk involved therein;  and

(2) made the condition safe."

Comment L:

"1. *Criminal intrusion.* For the purpose of this section, the unreasonable risk of harm from criminal intrusion constitutes a dangerous condition, so that where the landlord could by the exercise of reasonable care have discovered the unreasonable risk of criminal intrusion and could have made the condition safe from such unreasonable risk of criminal intrusion, he is subject to liability for physical harm caused by criminal intrusion if he has not taken the necessary precautions. As regards parts of the property retained in the landlord's control, common entranceways, fire escapes, halls and other approaches to the leased property are included. In addition, other parts of the property, such as door locks on the entrance to the tenant's apartment or office, may be effectively retained in the landlord's control in the sense that the landlord is the only one with the authority to make necessary

changes in order to avoid unreasonable risk of harm."

**"§ 344. Business Premises Open to Public: Acts of Third Persons or Animals**

A possessor of land who holds it open to the public for entry for his business purposes is subject to liability to members of the public while they are upon the land for such a purpose, for physical harm caused by the accidental, negligent, or intentionally harmful acts of third persons or animals, and by the failure of the possessor to exercise reasonable care to

(a) discover that such acts are being done or are likely to be done, or

(b) give a warning adequate to enable the visitors to avoid the harm, or otherwise to protect them against it."

Thus, from the conclusion that governmental entities bear the same responsibilities as do private landlords, *Loyd, supra,* and reinforced by the above extracts from the Restatement, appellant concludes, "By an examination of the integral elements of section 537.600(2), RSMo, it is clear that the mandate of the Legislature of this State is that the government of Missouri shall bear the same responsibility for a tortious injury on its premises as other possessors of land must bear."

Carrying her argument still further, appellant contends that as a response to "modernization" and the "ever-increasing expansion of urban society," courts in our country have recognized that the duty of possessors of land to maintain areas under their control in a reasonably safe condition for lawful users is the same "whether applied to physical defects or predictable criminal acts of third parties."

In support of this proposal, appellant cites to decisions from foreign jurisdictions, which bear consideration and comment by this court.

The first such foreign decision referenced is *Kline v. 1500 Massachusetts Avenue Apartment Corp.,* 439 F.2d 477 (D.C. Cir.1970). *Kline* was a case before the United States District Court, District of Columbia, wherein a tenant sought recovery of damages for injuries allegedly received when she was allegedly assaulted in a common hallway of a privately owned apartment house. In summary, the court ruled that a landlord who reserves his control over halls, stairs, or other parts of the property for common use by all tenants bears a duty to all those on the premises legally to use ordinary care and diligence to maintain those reserved parts in a reasonably safe condition. This duty is the same whether applied to a physical defect or predictable criminal acts by third parties.

This court is referred to the case of *Atamian v. Supermarkets General Corp.,* 146 N.J.Super. 149, 369 A.2d 38 (1976), a case involving a claim for damages by a supermarket patron for alleged injuries from and as a result of an alleged rape in the parking lot adjacent to the defendant supermarket. The case reached the Superior Court of New Jersey (Law Division) on defendant's motion to dismiss the plaintiff's claim. In denying the motion, the court stated that under New Jersey law, it is well established that a proprietor of premises to which the public is invited owes a duty of reasonable care to see that the invitees have a reasonably safe place in which to do that which is within the scope of the invitation. The court went on to declare that the determination of whether a duty exists to protect invitees against the criminal acts of third persons is ultimately a question of fairness, and the elements to be considered are the foreseeable relationship of the parties, the nature of the risk, the public interest, and proximate cause. The case, like the allegations of appellant's petition herein, noted previous assaults (five) and the employment of security guards. In *Atamian,* the court concluded the fact that a risk of harm to an invitee is attributable to the criminal activity of a third party does not of itself preclude liability on the part of an invitor since the invitor's liability may still be imposed where the conduct of the invitor creates circumstances in which the possibility or likelihood of criminal attack could reason-

ably have been either foreseen or anticipated.

This court is also directed to *Parslow v. Pilgrim Parking, Inc.*, 5 Mass.App. 822, 362 N.E.2d 933 (1977), a case where plaintiff filed suit against the owner of a parking garage for injuries allegedly received as a result of an alleged abduction (at gunpoint) and rape following the parking of her car in the defendant's garage. The Massachusetts court ruled against the defendant's motion for directed verdict, pointing out that the motion failed to state the specific ground therefor. The court went on to declare that plaintiff was a business invitee to whom defendant owed the duty of reasonable care to keep the premises in a reasonably safe condition for plaintiff's use and that such issue was for the jury to resolve.

Another authority to which appellant directs this court is *Morgan v. Buck Associates*, 428 F.Supp. 546 (1977), a United States District Court (Eastern District, Pennsylvania) case wherein plaintiff (an employee of a lessee in the defendant's shopping center) claimed damages for an alleged assault by unknown third persons while walking to her automobile at the end of her work schedule. The court ruled that absent a contrary provision in a lease agreement, an owner of real estate who leases parts thereof to others, but who retains control over common areas which are to be used by business invitees of various tenants has the obligation of keeping such common areas safe for such business invitees, *but not tenants*, as imposed by the law of Pennsylvania. The court, however, went on to construe plaintiff's status as a business invitee under Pennsylvania law, although the evidence revealed that she was an employee of a tenant of the shopping center. The court further held that the landlord's duty extended to protection against assault of business invitees.

As a final authority, appellant directs this court to *Duarte v. State*, 84 Cal. App.3d 729, 148 Cal.Rptr. 804 (1978). As will be observed infra, *Duarte* is an interesting case as regards the refusal, or at best, the failure of the California courts to follow it. *Duarte* involved an action against the State of California by the mother of a female student at California State University in San Diego. The daughter was raped and murdered in the student residence hall. The mother sought damages upon the multiple theories of breach of contract, negligence, wanton and willful misconduct, and negligent misrepresentation. Under California procedure, the trial court sustained demurrers to all counts of the petition without leave to amend the petition. The appeal sought reversal upon all counts, except wanton and willful misconduct.

On appeal, the trial court's action was reversed, and the reviewing court declared that *it would assume, for the purpose of the proceeding*, the truth of any properly pleaded factual allegation, but since the demurrers were granted without leave to amend, the *reviewing court would consider other relevant matters of which the court could take judicial notice, and matters according to representations in good faith could be cured by amendment.* The court further concluded that the most important factor or consideration in determining or establishing the want of ordinary care or duty is foreseeability. The court also declared that an "entrepreneurial" land occupier bears the duty to exercise reasonable care to protect invitees and patrons on his premises from the unlawful acts of third persons. The court then concluded that the plaintiff mother had stated a claim against the state on the theory that the university authorities had negligently misrepresented that the school campus was reasonably safe relative to the security of female students. In addition, the court held that the defense of sovereign immunity was not available as against a claim arising from a breach of contract between the university (as landlord) and the student (as tenant) or an implied covenant of habitability. The court went on further to hold that with respect to the doctrine of sovereign immunity when there is negligence, the rule is that liability and immunity are the exception. The court then added that if

conditions existing in a university dormitory constituted a dangerous condition in the nature of an invitation to an intruder to come in and molest students, the liability of the state *"would not be* negated" as a result of the combination of property defects and the unlawful acts of a third party intruder. In summary, the *Duarte* court ruled that sovereign immunity is not a defense when a public entity is sued upon a claim of an existing dangerous condition. A dangerous condition, as defined by the *Duarte* court, could exist as a result of a defect in the property, the wrongful acts of a third person, or the combination of these two factors.

As contrasted with the foregoing authority cited by appellant, respondent also directs this court to decisions from foreign jurisdictions. Before considering respondent's cited references, it is noted that *Duarte* (cited by appellant), a case from the Court of Appeals, Fourth District of California, was ordered (on January 18, 1979) vacated. The "second" *Duarte* opinion [*Duarte v. State*, 88 Cal.App.3d 473, 151 Cal.Rptr. 727 (1979)] again reversed the California trial court and ruled that the defendant university could not defend itself, within the doctrine of sovereign immunity, where it is alleged or shown that a dangerous condition existed. The "second" *Duarte* decision also held that the university did not have any statutory immunity from liability alleged to have arisen because of the negligence of its employees. It again held that if the conditions existing upon the dormitory premises constituted a dangerous condition in the nature of an invitation to an intruder to come in and to molest students, *the state's liability would not be negated* because of the combined defect in property and the unlawful act of a third-party intruder.[1]

Respondents herein vigorously point out that the Supreme Court of California ordered that the *Duarte* opinion not be officially published. From this, respondents suggest that the *Duarte* opinion has no precedential value. Research on that precise issue included inquiry of the California Supreme Court, which advised that the vacating of *Duarte* and the order that it not be published rendered *Duarte* a nullity, and the result for precedential purposes is as if *Duarte* had never issued. It was explained that the printing of *Duarte* was in error, and its publication should never have occurred. Further reference led this court to research Rules 976, 976.1, 977, and 978 of the California Rules of Court.

Thus, respondents' contention that California has rejected *Duarte* and that the case is of no precedential value is correct, according to California authorities.

In addition to the above challenge to *Duarte*, respondents direct this court's attention to the *Sykes v. County of Marin*, 43 Cal.App.3d 158, 117 Cal.Rptr. 466 (1974), a case wherein the parent of a high school student had met his daughter at the defendant school, and as the two returned to their automobile, the parent was assaulted and repeatedly stabbed by unknown third persons. The parent sought damages for his injuries against the public school upon the theory that the school parking lot, because it was unlighted, created a dangerous condition, thus rendering the school liable for injuries caused by the unlawful acts of third persons. The *Sykes* court concluded that the maintenance of the parking lot without lighting was not a dangerous condition within the statutes of California (i.e., § 830/835 Government Code). The precise question taken up by the *Sykes* court was, "Does the maintenance without lights of an area as a parking lot by a school district or a county constitute a dangerous condition of the property under the Government Code so as to make the public entities liable to a parker injured by robbers?" *Sykes*, 117 Cal.Rptr. at 467. As noted, the *Sykes* court held in the negative.

---

1. It is noted that in the case of *Villalobos v. University of Oregon*, 47 Or.App. 103, 614 P.2d 107 (1980), the court mentions *Duarte* without adoption, and the case was disposed of under the Oregon statute of limitations. But see *Keck v. American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983).

Another authority referred by respondents is the case of *Hayes v. State*, 11 Cal.3d 469, 521 P.2d 855, 113 Cal.Rptr. 599 (1974), which was a case involving a claim for damages for personal injury and death alleged to have resulted from an attack by unknown assailants upon plaintiffs, as invitees, while on a beach which was found to be a part of the confines of the University of California, Santa Barbara. The California Supreme Court in *Hayes*, at 521 P.2d 855, 857, 113 Cal.Rptr. 599, 601, ruled:

> "Liability for injury caused by a dangerous condition of property has been imposed when an unreasonable risk of harm is created by a *combination* of defect in the property and acts of third parties. (citations omitted) However, courts have consistently refused to characterize harmful third party conduct as a dangerous condition—absent some concurrent contributing defect in the property itself." (supporting citations omitted)

The court went on further to point out that in those cases of recovery, such recovery was based upon some physical feature of the property. The court noted that in California, the same rule applies to private landowners.

It is noted by respondents that the above ruling in *Hayes* was adopted by the courts of New Jersey in the case of *Setrin v. Glassboro State College*, 136 N.J.Super. 329, 346 A.2d 102 (1975). *Setrin* ruled that sovereign immunity was not waived as against a claim for damages arising out of injuries received by a student as a result of being stabbed by another student. Thus, the New Jersey Court in *Setrin* recognized the California ruling in *Hayes* as controlling, and thus dispositive of the issue, and ruled that criminal conduct of a third person is not a dangerous condition rendering the public entity liable.[2]

Respondents further cite the case of *Kane v. Hartford Accident and Indemnity Co.*, 98 Cal.App.3d 350, 159 Cal.Rptr. 446 (1979). Respondents first note that *Kane*

is a later decision than *Duarte*, and point out that the court in *Kane* makes no reference to *Duarte*. This, as conceived by respondents, further illustrates that *Duarte* has no precedential value. *Kane* was a case where an employee attempted to recover against her employer for an alleged rape by a fellow employee. The plaintiff contended that the employer was negligent in failing to investigate the criminal past of the wrongdoer. The case turned upon the lack of the "indispensable precondition" to find liability, to wit, the duty of care owed by an alleged wrongdoer to a plaintiff. By analogy, the court in *Kane* was faced with the basic questions presented in *Duarte, supra*, except that the parties involved did not include a public entity. The *Kane* court affirmed the nonsuit of the plaintiff's claim.

Since appellant attempts to buttress her argument of a "dangerous condition" by pointing out the alleged negligence of respondents' employee (the security guard who was not at the exit and who allegedly could not be found by appellant), it becomes necessary to briefly consider the alleged negligence as it is claimed to relate to the "dangerous condition."

Appellant first contends that in her petition (and a reading thereof supports her assertion) she alleges that the negligence of the security guard during the scope and course of his employment, i.e., his not being at the door and his not being found, created a dangerous condition and thus an exception within the statute.

Respondents confront the negligence allegation of appellant by asserting that the Missouri General Assembly, by the adoption of the waiver within § 537.600(2), did not intend to render the state or its political subdivisions liable for "injuries caused by the mere human failure of its employees." Respondents further declare that such "waiver" is limited to injuries caused or produced by physically dangerous conditions of and upon state property. Respon-

---

**2.** It is further noted that *Sykes* and *Hayes* followed earlier California decisions. See *Bryant v. County of Monterey*, 125 Cal.App.2d 470, 270 P.2d 897 (1954) and *Grove v. County of San Joaquin*, 156 Cal.App.2d 808, 320 P.2d 161 (1958).

dents again refer this court to *Sykes, Hayes, Bryant,* and *Grove, supra.* It serves no purpose to repeat what those authorities declare. In addition, however, this court is referred to the case of *Farrell v. City of Long Beach,* 132 Cal.App.2d 818, 283 P.2d 296, 297 (1955), a California case wherein a child was playing on a playground owned and operated by the municipality. The playground director asked the child to go to another playground and to participate in some recreational activities. The playground director operated the child's bicycle with the child seated on the handlebars. The child's feet became entangled in the front wheel of the bicycle and the child was injured when thrown to the ground. In seeking recovery for those injuries, the plaintiff alleged that his injuries were caused by a dangerous or defective condition of property. The trial court dismissed the petition and the dismissal was affirmed on appeal. The reviewing court held, "[I]t is not possible to allege a valid cause of action for the reason that the playground itself was not directly responsible for plaintiff's injuries." *Farrell,* 283 P.2d at 297. The court went on to point out that the negligence of the city employee standing alone was not sufficient. See also *Bartell v. Palos Verdes Peninsula School District,* 83 Cal.App.3d 492, 147 Cal.Rptr. 898 (1978), and *Akers v. City of Palo Alto,* 194 Cal.App.2d 109, 14 Cal.Rptr. 767 (1961). Under *Farrell, Bartell,* and *Akers,* recovery based only upon negligence of the public employee was denied as a matter of law. Respondents urge that these authorities provide the needed constructive analysis for this court's interpretation and application of § 537.600(2).

Appellant's contention that the state and other public entities should be considered (liability wise) as private landowners appears to this court to run contrary to the intent of the statute. The statute itself was enacted by the General Assembly following a decision by the Missouri Supreme Court, *Jones v. Missouri Highway Commission,* 557 S.W.2d 225 (Mo. banc 1977), in which the Supreme Court placed on its own decision in *Jones* a one-year moratorium, thus allowing subsequent action by the General Assembly. Examination of the very wording of the statute, § 537.600(2), must be made. That section first reads in part: "Injuries caused by the *condition of a public entity's property.*" That term is followed by: "... if the plaintiff establishes *that the property* was in dangerous condition at the time of the injury."

When the above terms are read either separately or conjunctively, it readily appears to this court that the General Assembly, with the adoption of this language, thus limited the term "dangerous condition" exclusively to the physical condition of the public property. This conclusion is reached not only as a result of the mere reading of the above terms, but in further consideration of another portion of subsection (2). It can be observed that in addition to the above wording, the following is found: "... *and* that either a negligent or wrongful act or omission of an employee of the public entity within the course of his employment created the dangerous condition ..."

Thus, when read in its entirety, § 537.600(2) really declares that a public entity will be liable, and thus cannot defend against that liability under the doctrine of sovereign immunity, if its property is in a "dangerous condition" (i.e., that it is physically defective), and/or that an employee of the public entity by act or omission (negligent or wrongful) created the dangerous condition, and/or the public entity had actual or constructive notice of the dangerous condition. The statute does not say that the negligent or wrongful act or omission of an employee, or the actual or constructive notice are unto themselves a "dangerous condition." It appears to this court that had the General Assembly intended that one employee's act/omission or that the actual/constructive notice of the condition provided the basis for a "dangerous condition", or stated another way, if either an act or omission or actual/constructive notice were unto themselves a "dangerous condition", then the General Assembly would have expressly declared either or

both to mean a "dangerous condition." It is further to be noted that *both* the act/omission and the actual/constructive notice reference "dangerous condition." That is, both provisions specify under what circumstances a party may seek recovery for damages arising out of the "dangerous condition" of the public property. By use of the conjunctive term *and*, it appears to this court that by the wording of this section of the statute, the General Assembly directed attention exclusively to some physical defect of the property and then proceeded to describe under what circumstances (i.e., act/omission or actual/constructive notice) recovery could be sought.

What appellant seeks is to engraft upon the term "dangerous condition" any and all conditions or events which, if foreseeable, cause or produce injury arising out of or in conjunction with the property or employees of a public entity. If appellant's argument were carried to its logical conclusion, § 537.600(2) would become a nullity. It has long been held that the General Assembly is not charged with doing a useless act. *Press-Journal Publishing Co. v. St. Peters Courier-Post*, 607 S.W.2d 453, 457 (Mo. App.1980).

When one reviews authority in our own state concerning the question of "dangerous condition", it becomes readily apparent that this term (dangerous condition) refers exclusively to some physical condition upon the property and not other "conditions." *Milne v. Pevely Dairy Co.*, 641 S.W.2d 158 (Mo.App.1982).

It must be kept in mind that with the enactment of § 537.600, the General Assembly sought a legislative curb or limitation upon the previous ruling by the Missouri Supreme Court in *Jones, supra.* Thus, § 537.600 reflects legislative limitation upon judicial effort to eliminate or reduce the application of the doctrine of sovereign immunity as a defense for public entities. This legislative intent is clearly noted in the very first paragraph of § 537.-600, wherein the General Assembly first reinstates the doctrine of sovereign immunity and then creates two exceptions to the

doctrine within § 537.600(1) and (2). If, as appellant contends, any "condition" falls within the term "dangerous condition", then § 537.600(2) becomes mere surplusage if it be shown that there was an injury, that such injury was foreseeable, and there is a showing of an act or omission by an employee, or that the public entity had actual/constructive notice of such "condition." As viewed by this court, § 537.-600(2) does not lend itself to such a broad interpretation as insisted upon by appellant.

■ Thus, it is the conclusion of this court that the term "dangerous condition," as that term is expressed and otherwise used in conjunction with § 537.600(2), RSMo 1978 relative to the doctrine of sovereign immunity as a defense by public entities, is a term with a very limited and narrow meaning, thus providing further that the term "dangerous condition" shall be understood and its application limited to describe, define, explain, denote, or reference only and exclusively the physical defects in, upon, and/or attending to the property of a public entity. In reaching this conclusion, this court has been persuaded and adopts the rationale from our sister state of California as expressed within *Sykes, Hayes, Kane, Bryant, Grove, Farrell, Bartell,* and *Akers.* In addition, this court notes and follows the adoption of the rationale in those just-cited authorities by our sister state of New Jersey in *Setrin, supra.*

■ The result of the foregoing conclusion is to foreclose appellant's claimed right of recovery. In addition to deriving a conclusion of the issue, this same result likewise dictates the final disposition of the instant case as observed infra.

Appellant herein initiated her cause of action prior to the ruling of the Missouri Supreme Court in *Bartley v. Special School District of St. Louis County*, 649 S.W.2d 864 (Mo. banc 1983). In addressing the doctrine of sovereign immunity, the court declared that § 537.600(2) is not an independent waiver of sovereign immunity, and further a public entity waives sovereign immunity only upon the pleading and

proof, by a plaintiff, that the public entity has acquired insurance to cover liability and that the requirements of § 537.610.1, RSMo have been met.

Thus, the fact that the ruling in *Bartley* issued while the instant case was pending would usually require this court to reverse and remand the pending cause to enable the plaintiff to amend his or her pleadings in conformity with the ruling entered during the pendency of the action (i.e., *Bartley, supra*). However, in the instant case, with and upon the above conclusion reached relative to appellant's claim under § 537.600(2), a reversal and remand to enable appellant to amend her petition to allege the existence of insurance covering respondents' liability, plus the opportunity to prove same, would be an exercise in futility. Appellant is denied recovery, even if she were able to plead and prove the existence of insurance coverage, because of this court's conclusion and ruling concerning the term "dangerous condition."

During oral argument of this case, appellant asked this court how a plaintiff is supposed to plead, in good faith, the existence of insurance coverage, and how the same plaintiff is supposed to prove the existence of such coverage. Appellant further urged this court to rule that insurance coverage within § 537.610 and § 537.600 be held to be an affirmative defense. While desirous of acknowledging appellant's inquiry, this court must respond only by advising appellant that this court is bound by the ruling of the Missouri Supreme Court in *Bartley, supra*, which sets forth the burden upon a plaintiff seeking recovery against a public entity.

For and upon the reasons expressed herein, the ruling of this court is that the trial court did not err in the dismissal of appellant's petition, and the judgment is in all respects affirmed.

All concur.